IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHELLE KENNY,

      Plaintiff,

  v.

REGIS CORPORATION, et al.,

      Defendants.

                                /

No. C 06-07521 CRB

**MEMORANDUM AND ORDER**

Plaintiff filed this California law putative wage and hour class action in this Court in December 2006.  Now pending for decision is the motion of defendant Regis Corporation ("Regis") for summary judgment.  Regis moves for summary judgment on the ground that it was not plaintiff's employer and therefore cannot be liable for the alleged wage and hour violations.  After carefully considering the parties' submissions, and having had the benefit of oral argument, Regis's motion is GRANTED.

**BACKGROUND FACTS**

Plaintiff worked in various Supercuts hair salons as an hourly employee from October 1999 through October 2004.  She held the positions of stylist/manager and stylist/shift manager. Plaintiff alleges defendants violated California's wage and hour laws, including overtime laws, and failed to provide meal and rest periods as required by California law.  She asserts that during her employment she missed an average of five rest breaks per week, and

1 she had her meal breaks interrupted or cut short approximately five times per week.  She also

2 alleges that she had to perform uncompensated duties such as employee scheduling, ordering

3 supplies, and banking before clocking into her shift and sometimes after clocking out or

4 during her meal periods.

5 She filed this wage and hour putative class action against Regis and its subsidiaries,

6 Supercuts, Inc. and Supercuts Corporate Shops, Inc.  Regis is headquartered and incorporated

7 in Minnesota, and owns several haircare-related businesses, including the Supercuts entities,

8 Trade Secret, Vidal Sassoon, and Blaine Beauty School.

9 Supercuts Corporate Shops, Inc. is a wholly-owned Regis subsidiary that was

10 purchased by Regis in 1996.  Supercuts hair salons are designed to provide quick and quality

11 hair cuts to drop-in clientele.  The salons are staffed by hair stylists who report to and are

12 managed by a Store Manager and/or a Shift Manager ("Manager").  The stylists and

13 Managers are Supercuts employees.  The Managers interview applicants, make hiring

14 recommendations and/or decisions, schedule employees' work hours, implement and enforce

15 workplace policies, review and edit time entries, respond to employee concerns, and

16 recommend and/or make decisions as to when to discipline and/or terminate employees.

17 Managers are typically present in the salon on a daily basis, although some Managers have

18 oversight of more than one salon location.

19 Managers report to Area Supervisors, who are also employed by Supercuts.  Area

20 Supervisors have oversight responsibility for several stores in a given geographic area.  Area

21 Supervisors conduct Manager interviews, may approve a Manager's hire or termination

22 recommendation, approve an employee transfer to another salon location, work with

23 Managers to determine appropriate staffing levels and quantities of overtime work, and

24 approve promotion requests.  Area Supervisors report to Regional Managers, who are also

25 Supercuts employees. Each Regional Manager oversees approximately 75 to 100 salons and

26 is responsible for developing and promoting business, hiring Area Supervisors, participating

27 in the selection of a new salon sites, working with Managers to set pay rates, assisting Area

28 Supervisors in implementing and enforcing wage and hour work policies, training Area

1  Supervisors and Store Managers, and making the ultimate decisions about salon staffing
2  levels.

3      Regional Managers report to nationwide Salon Directors who are employed by Regis,
4  but are dedicated to Supercuts. The Directors report to Supercuts Chief Operating Officer,
5  who is also employed by Regis but dedicated exclusively to Supercuts. Although the
6  Directors and Supercuts Chief Operating Officer are Regis employees, their salaries are
7  "charged against Supercuts, and reflected as an expense on Supercuts' books."

8      Employee benefits, legal services and payroll services are handled at the corporate
9  level. Within each of the corporate departments, designated persons are dedicated
10 exclusively to Supercuts. The salaries paid to Regis employees providing services to
11 Supercuts are charged to Supercuts and are an operating expense reflected on Supercuts'
12 books. Supercuts pays all rent and taxes for each salon location and each location has its
13 own user account for utilities and is separately billed in accordance with that location's use.
14 Supercuts maintains its own profit and loss statement that is distinct from Regis; it also
15 maintains its corporate records separate from Regis's records. Supercuts and Regis share
16 headquarters in Minneapolis, although Supercuts personnel work in distinct areas. As of July
17 2005, all paychecks for Supercuts employees were identified as coming from Regis rather
18 than Supercuts.

19     Regis owns the point-of-sale cash machines used in the Supercuts salons and provides
20 information to Supercuts' employees on how to clock in and out for shifts and breaks.
21 Employee time records are collected through the point-of-sale equipment and transferred to
22 the main processing area in Minneapolis. The Supercuts stylists receive a guaranteed base
23 wage and then earn more money on a productivity scale. The compensation schedule was
24 designed by Supercuts employees and was not dictated by Regis. Regis and Supercuts have
25 the same health plan, pension and profit sharing plan. Plaintiff's W-2 identifies Regis as her
26 employer. Regis sometimes refers to Supercuts as a Regis "division."
27 //
28 //

3

**PROCEDURAL HISTORY**

Plaintiff filed this putative class action in December 2006. At a May 2007 case management conference, the Court set a January 18, 2008 hearing date for a motion for summary judgment *or* motion for class certification. Regis filed a motion for summary judgment for hearing in January, arguing that it is not liable as a matter of law because it was not plaintiff's employer. Plaintiff moved to continue the hearing so that she could conduct additional discovery. The Court granted plaintiff's motion and continued the hearing to March 7, 2008. Plaintiff has filed an opposition to Regis's motion for summary judgment.

**SUMMARY JUDGMENT STANDARD**

A principal purpose of the summary judgment procedure is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). A party moving for summary judgment that does not have the ultimate burden of persuasion at trial (here, defendant Regis) has the initial burden of producing evidence negating an essential element of the non-moving party's claims *or* showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

If Regis does not satisfy its initial burden, plaintiff has no obligation to produce anything and summary judgment must be denied. If, on the other hand, Regis has satisfied its initial burden of production, then plaintiff may not rest upon mere allegations or denials of Regis's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. Nissan Fire & Marine Ins. Co., 210 F.3d at 1102. A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

**DISCUSSION**

1  It is undisputed that plaintiff was employed by Supercuts as a Manager at various Supercuts'

2  salons.  Plaintiff nonetheless argues that Regis is also liable for the alleged wage and hour

3  violations under the "integrated enterprise test," and as Supercuts' alter ego.

4  **A.    Integrated Enterprise Test**

5  Under the "integrated enterprise test," two corporations may be treated as a single

6  employer for purposes of liability.  Laird v. Capital Cities/ABC, Inc., 68 Cal.App.4th 727,

7  737 (1998).  While "this test is most often applied in the context of claims arising under Title

8  VII and the California Fair Employment and Housing Act," courts in California have also

9  applied it to claims arising from alleged violations of the California Labor Code.  Maddock

10  v. KB Homes, 2007 WL 4287627 *9 (C.D. Cal. Oct. 18, 2007) (citing cases).

11  In determining whether entities are liable as a single employer or an integrated

12  enterprise under this test, the courts consider four factors: (1) interrelation of operations; (2)

13  common management; (3) centralized control of labor relations; and (4) common ownership

14  or financial control.  Laird, 68 Cal.App.4th at 737.  "Under this test, common ownership or

15  control alone is never enough to establish parent liability."  Id. at 738.  And "[a]lthough

16  courts consider the four factors together, they often deem centralized control of labor

17  relations the most important."  Id.  "The critical question is, [w]hat entity made the final

18  decisions regarding employment matters related to the person claiming [injury]?  A parent's

19  broad general policy statements regarding employment matters are not enough to satisfy this

20  prong.  To satisfy the control prong, a parent must control day-to-day employment decisions

21  of the subsidiary."  Id. (internal quotation marks and citations omitted).

22  "To make a sufficient showing of 'interrelation of operations' on summary judgment,

23  the plaintiff must do more than merely show that officers of the subsidiary report to the

24  parent corporation or that the parent benefits from the subsidiary's work.  Since these facts

25  exist in every parent-subsidiary situation, such a showing would create a triable issue of

26  material fact in every case.  What the plaintiff must show, rather, is that the parent has

27  exercised control to a degree that exceeds the control normally exercised by a parent

28  corporation."  Id. (internal quotation marks and citation omitted).

1    Because corporate entities are presumed to exist separately, "the corporate existence

2 form will be disregarded only when the ends of justice require this result." Id. at 737. As a

3 result, "an employee who seeks to hold a parent corporation liable for the acts or omissions

4 of its subsidiary on the theory that the two corporate entities constitute a single employer has

5 a heavy burden to meet under . . . California . . . law." Id.

6    Plaintiff has not met her burden. The evidence is insufficient to support a finding that

7 Regis exercised day-to-day control over Supercuts' employment decisions in general, or that

8 it exercised any control of Supercuts' decisions with respect to plaintiff. See Laird, 68 Cal.

9 App. 4th at 738-39. The undisputed evidence is that Supercuts Managers set work schedules

10 and implemented meal and rest periods and did the hiring and firing. There is no evidence

11 that Regis in any way controlled the job duties or working conditions of Supercuts

12 employees, including plaintiff. Indeed plaintiff testified that she--a Supercuts Manager--

13 would counsel employees about not taking their meal periods. She also testified that the

14 decision to terminate her employment was made by Supercuts personnel. It is also

15 undisputed that Supercuts personnel determine the rates of pay. The fact that Regis issued

16 the paychecks is not insufficient; signing the checks is not day-to-day control of labor

17 relations. Regis's ownership of the hardware and software used in computing employee pay

18 is likewise immaterial; plaintiff does not cite a single case that suggests such ownership is

19 sufficient to show that two separate entities operate as a single employer. See Maddock v.

20 KB Homes, Inc., 2007 WL 2221030 *15 (C.D. Cal. July 9, 2007) (holding that parent

21 corporation's use of same payroll service as subsidiary insufficient to show single employer

22 in light of contradictory evidence). In sum, there is no evidence that Regis controlled the

23 working conditions of which plaintiff complains; namely, working off the clock and missed

24 meal and rest periods.

25    Plaintiff has also not produced evidence sufficient to show that the operations of

26 Supercuts and Regis were "'interrelated'-i.e., that [Regis] exercised greater control over

27 [Supercuts'] operations than that which a parent corporation would normally exercise over its

28 subsidiary." Laird, 68 Cal.App.4th at 739. While they are headquartered in the same

6

1 building complex, each maintains a separate office and separate management and each is

2 separately registered to do business in California.  Financial statements are separately

3 maintained and Supercuts is charged for all services provided by Regis employees.

4 Supercuts maintains its own marketing and education/training departments.  The fact that

5 Regis issued Supercuts employees' paychecks and appeared as their employer on the W-2

6 statements is, without more, insufficient to overcome Regis's evidence of separate

7 operations.  Plaintiff does not cite any case that suggests that such a formalistic fact–the

8 name on the paycheck--makes two entities a single employer for purposes of California's

9 wage and hour laws.  Nor has plaintiff shown more common management than would be

10 expected in a normal parent-subsidiary relationship.  Plaintiff may not hold Regis liable

11 under the integrated enterprise test as a matter of law.

## B.    Alter Ego

13    "The alter ego doctrine arises when a plaintiff comes into court claiming that an

14 opposing party is using the corporate form unjustly and in derogation of the plaintiff's

15 interests."  Mid-Century Ins. Co. v. Gardner, 9 Cal.App.4th 1205, 1212 (1992).

16       There are two general requirements for disregarding the corporate entity.  First,
      there must be "such unity of interest and ownership that the separate
17       personalities of the corporation and the individual no longer exist."  Second, it
      must be demonstrated that "if the acts are treated as those of the corporation
18       alone, an inequitable result will follow."  "When considering the application of
      the alter ego doctrine to a particular situation, it must be remembered that it is
19       an equitable doctrine and, though courts have justified its application through
      consideration of many factors, their basic motivation is to assure a just and
20       equitable result."

21 NEC Electronics Inc. v. Hurt, 208 Cal.App.3d 772, 777 (1989) (internal citations omitted).

22       Plaintiff does not even attempt to show that an inequitable result will obtain if Regis is

23 dismissed from this lawsuit.  Plaintiff's response--that Supercuts has not come forward with

24 evidence of its ability to satisfy a judgment--reverses the summary judgment and trial

25 burdens.  Because plaintiff has the burden of proving that Regis is Supercuts' alter ego,

26 Regis's summary judgment burden is merely to argue that plaintiff cannot meet its trial

27 burden.  Nissan Fire & Marine Ins. Co., 210 F.3d at 1102.  Regis has met this burden.

28 Therefore, to survive summary judgment plaintiff must produce admissible evidence that

1　shows there is a genuine issue of material fact for trial.  Nissan Fire & Marine Ins. Co., 210

2　F.3d at 1102.  Plaintiff does not even claim that she has done so.   Regis cannot be held liable

3　as a matter of law.

4　**CONCLUSION**

5　　　As plaintiff has not produced evidence sufficient to support a finding by a reasonable

6　trier of fact that Regis was plaintiff's "employer" for purposes of her state law claims,

7　Regis's motion for summary judgment is GRANTED.

8　　　The Court DENIES defendant's motion to strike the class allegations.  According to

9　the minutes of the May 4, 2007 Case Management Conference, the Court set a deadline for

10　the filing of a motion for summary judgment *or* motion for class certification.  The other

11　arguments made by defendant are more appropriately considered in the context of a motion

12　for class certification, should plaintiff so move.

13　　　As the parties have had ample time to conduct class certification discovery, plaintiff is

14　directed to file her motion for class certification on or before April 4, 2008 for hearing on

15　May 9, 2008.

16　　　**IT IS SO ORDERED.**

17

Dated: March 10, 2008

18　　　　　　　　　　　　　　　　　　CHARLES  R. BREYER
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28